WARNER, J.
Appellant, a juvenile charged as an adult, appeals his sentence to 270 years in prison following his guilty pleas to fifteen separate charges. He claims his sentence violates Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). We have recently held that Graham does not apply to sentences for terms of years. Guzman v. State, 110 So.3d 480, 481 (Fla. 4th DCA 2013). Because of Guzman, we affirm but certify the same questions we certified in Guzman.
The state charged appellant with fifteen counts: count 1 — racketeering; count 2— conspiracy to commit racketeering; count 3 — home invasion robbery with a firearm; count 4 — kidnapping with a firearm; count *414 5 — home invasion robbery with a firearm; count 6 — kidnapping with a firearm; count 7 — conspiracy to commit home invasion robbery with a firearm; count 8 — attempt to commit home invasion robbery with a firearm; count 9 — home invasion robbery with a firearm; count 10 — kidnapping with a firearm; count 11 — discharging a firearm in public; count 12 — conspiracy to commit home invasion robbery with a firearm; count 13 — aggravated assault with a firearm on a police officer; count 14— grand theft (motor vehicle); and count 15 — possession of a firearm by a convicted felon. All of the charges arose between May 19, 2010, and June 8, 2010. Appellant was seventeen at the time of all of the alleged crimes.
Appellant pleaded guilty to all of the above charges, as well as nine separate violation of probation charges. The plea agreement included an agreement to testify truthfully concerning several cases as well as providing truthful statements to the state attorney regarding other persons specifically named in the agreement. The state in its discretion could suggest a sentence to the court, but appellant did not bargain for a specific sentence. His failure to truthfully testify or his refusal to testify at all would constitute “a substantial non-compliance with the specific terms of this plea agreement,” and if this were to happen, appellant could be sentenced in accordance with the Criminal Punishment Code.
At the plea hearing, appellant indicated that he understood that his cooperation in future cases would be a factor at sentencing. The court noted that the plea agreement did not contain an “upfront promise recommended sentence.” Appellant confirmed under oath that his testimony in several prior depositions and statements was truthful. The state indicated that “any deviation from those statements also would constitute a substantial noncompliance.” The court accepted the plea and adjudicated appellant guilty.
Subsequently, appellant changed his testimony from a prior deposition and testified that two of the individuals named in the plea agreement, about whom he was to give truthful statements, were not involved in robberies, although he had previously testified they were involved. Later, the court held a sentencing hearing. After explaining that appellant’s deviation from his sworn testimony jeopardized several prosecutions of his cohorts, the state requested life in prison but recognized that pursuant to Graham the state had to ask for a term-of-years and not life. The state requested the maximum sentence on every count. The state explained that the crimes arose from six separate episodes. It noted that “the defendant has made it clear that he is not cooperating and his behavior is severe, significant, reprehensible, violent,” and that “[h]e placed many people at great risk of physical harm.”
Finding that appellant had materially breached the plea agreement, the court sentenced him to lengthy sentences for each charge and then made the sentences for each criminal episode consecutive to each other. The net result was a total sentence of 270 years.
Appellant timely filed his notice of appeal. He also filed a motion to correct an illegal sentence pursuant to Graham, contending that the 270-year prison term was the functional equivalent of life in prison which would violate Graham, as appellant was still a juvenile when the various crimes were committed. The court denied the motion, finding that Graham did not prohibit juveniles from being sentenced to a term of years. The court explained that a “life sentence” was a term of art, and a term-of-years sentence was not a life sen *415 tence. From these orders, appellant has appealed.
In Graham, the Supreme Court held that a sentence of life without parole for a juvenile who committed a non-homicide offense is a violation of the Eighth Amendment’s protections against cruel and unusual punishment. The Court explained:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants ... some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.... It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.
130 S.Ct. at 2030. The Court noted that “[c]ategorical rules tend to be imperfect, but one is necessary here.” Id.
In Guzman, we have already addressed the question of whether a term-of-years sentence could constitute a violation of the prohibition of Graham. Noting that Graham prohibited only an actual life sentence without parole for a juvenile, we agreed with the Fifth District that Graham is limited to life sentences and that a term of years sentence, regardless of how long, does not violate Graham. We acknowledged the difficulty of determining which term-of-years sentences could be considered life sentences and which would not:
While we understand the temptation to acknowledge that certain term-of-years sentences might constitute “de facto” life sentences, we are compelled to apply Graham as it is expressly worded, which applies only to actual life sentences without parole. Without further guidance from our supreme court or the United States Supreme Court, it is logistically impossible to determine what might or might not constitute a de facto life sentence — assuming such a concept is to be considered in the first instance.
Guzman, 110 So.3d at 483 (emphasis supplied). The sentence in Guzman amounted to sixty years, nowhere near the sentence of 270 years involved in this case. Here, there is no doubt that the sentence, although a term of years, will incarcerate appellant, a juvenile, for the rest of his life. The trial court accomplished this by making the sentences consecutive, as each sentence could have provided the appellant with at least the possibility that he would not serve the rest of his life in prison.
There is no possibility of parole, and Florida has a statutory requirement that a prisoner serve at least eighty-five percent of his sentence. See § 944.275(4)(b)3., Fla. Stat. (2010). Eighty-five percent of 270 years is still well over the natural life of any person. Thus, although this is a term-of-years sentence, it is an actual life sentence. It provides no opportunity for release based upon maturity and rehabilitation. ⅝
Nevertheless, based upon Guzman, we apply Graham as it is worded and limit it to the life sentences without parole, not to a term of years. While we are certain that as a practical matter the sentence imposed constitutes incarceration of the appellant for life, without guidance from the United States Supreme Court or the Florida Supreme Court, we cannot provide direction to the trial court as to how long a sentence the court may impose on appellant without violating Graham. We thus affirm and certify the same questions as were certified in Guzman:
*416 1. DOES Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), APPLY TO LENGTHY TERM-OF-YEARS SENTENCES THAT AMOUNT TO DE FACTO LIFE SENTENCES?
2. IF SO, AT WHAT POINT DOES A TERM-OF-YEARS SENTENCE BECOME A DE FACTO LIFE SENTENCE?
STEVENSON and TAYLOR, JJ., concur.